UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN

CASE NO. 1:06-CV-156

**MICHAEL E. PURSLEY**                                                                    **PLAINTIFF**

**V.**

**DAVID KITCHENS,**
**Individually and as Logan County Deputy; and**
**WALLACE WHITTAKER,**
**Individually and as Logan County Sheriff**                       **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon a motion by Defendants for summary judgment. (DN 20). The Plaintiff asserts various theories of liability against the Defendants, Deputy Kitchens ("Kitchens") and Sheriff Whittaker ("Whittaker") of the Logan County (Kentucky) Sheriff's Department, stemming from the alleged use of excessive force by Deputy Kitchens during the Plaintiff's arrest. Fully briefed, this matter is ripe for decision. For the following reasons, the Defendants' motion is **GRANTED**.

### I. FACTS

On November 6, 2005, Defendant Kitchens traveled to Plaintiff Michael E. Pursley's home after receiving a call that "there was a loud vehicle driving through people's homes." The Plaintiff testified that in the hour before Kitchens arrived, he had consumed seven twenty-four ounce Busch Lites and two shots of Jim Beam. When Kitchens arrived at the Plaintiff's home, the Plaintiff was standing outside his trailer near his truck. Kitchens advised the Plaintiff to go into his house, but instead the Plaintiff moved toward Deputy Kitchens and into the road in front of his home where Deputy Kitchens was standing. At this point, Deputy Kitchens again told the Plaintiff to go into his home, but when the Plaintiff refused, Kitchens told him that he was under arrest. The Plaintiff

eventually began walking toward his home. At this point, Kitchens and a backup officer who had arrived - Deputy Shackelford - pulled their cruisers into the Plaintiff's driveway. The video shot from Defendant Kitchen's cruiser then shows 1) the Plaintiff walking onto his porch and turning to face the officers; 2) the officers approaching the Plaintiff and attempting to place him under arrest; and 3) the Plaintiff then fleeing into his home with the officers in pursuit.[1] Both parties agree that once they were inside the home, Defendant Kitchens tasered the Plaintiff to stop him. However, the Plaintiff pulled the taser prong out and continued to run toward his bedroom. At that point, Defendant Kitchens sprayed pepper spray into the Plaintiff's eyes. When the Plaintiff put his head down, Deputy Kitchens tackled him and then handcuffed him, and when the Plaintiff then refused to walk, he was carried to the police car by the officers and taken to jail. The Plaintiff also contends, and the video seems to confirm, that Defendant Kitchens pulled the Plaintiff up by his hair when he refused to walk to the cruiser and refused to decontaminate the Plaintiff's eyes after he was handcuffed even though he complained of pain.

Kitchens testified that in his position as a Logan County deputy, he had responded to calls concerning the Plaintiff at least once or twice a month - sometimes the calls were from the Plaintiff about his live-in girlfriend; sometimes the calls were from the live-in girlfriend about the Plaintiff; and sometimes the calls were from neighbors complaining of the Plaintiff's drunken, disorderly conduct or loud music. Kitchens also testified that, at the time of the arrest, he knew that the Plaintiff kept firearms in his home and that a Kentucky state policeman had once told him that the Plaintiff had

---

[1] Defendant Kitchens contends that the Plaintiff made a threatening, combative gesture toward the officers while he standing on the porch, but the Plaintiff denies this allegation and the video itself is unclear as to this fact. However, because the Court finds that this dispute does not involve a "material fact" that might affect the outcome of the suit under the governing law, it does not preclude the entry of summary judgment. See, e.g., Pharakhone v. Nissan N. Am., Inc., 324 F.3d 405, 407 (6th Cir. 2003); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Here, no matter whose version of events is accepted in relation to this specific fact, the Plaintiff's claim of excessive force fails.

2

"pulled a gun" on him. He also knew that the Plaintiff had previously shot at his brother through the windshield of his brother's truck and that the Plaintiff had been arrested for assault, wanton endangerment with a shotgun, stalking and harassment, driving under the influence, and disorderly conduct.

**B. Deputy Kitchens' History**

Prior to his employment with the Logan County Sheriff's Department, Kitchens worked for the Oak Grove (Kentucky) Police Department. While there, Kitchens received a verbal warning after state police were called to his home in response to a "domestic situation" and was sued for allegedly using excessive force. Following the lawsuit, Kitchens was suspended from the Oak Grove police force and eventually resigned. In apparent relation to the incident involving Kitchens' alleged use of excessive force, another Oak Grove police officer wrote a letter to the mayor of Oak Grove and the Chief of Police. In the letter, the officer describes how he believes Kitchens mistreated a detainee and then lied to cover it up and that Kitchens should be terminated from his position as a police officer. (DN 23, Attach. 5). According to Kitchens, he informed Sheriff Blick, the individual who hired him at the Logan County Sheriff's Department, about the Oak Grove incident and even showed him a videotape of the incident. According to Kitchens, he also informed Sheriff Blick prior to his hire that his wife had filed assault charges against him. In response to the charges, he pled guilty to a charge of menacing.

In early 2005, Logan County Sheriff Wallace Whittaker handled two incidents involving Kitchens. The first occurred when Kitchens' girlfriend called Sheriff Whittaker after Kitchens "pushed her." Sheriff Whittaker ordered Kitchens to leave the girlfriend's home and not to return. Kitchens, however, returned to her home the next day. When Sheriff Whittaker learned that Kitchens had disobeyed his order, he placed Kitchens on probation from his supervisory duties for one year.

3

Kitchens was on probation at the time of the incident with the Plaintiff. During this time, Sheriff Whittaker also received a verbal complaint from a woman who claim that Sheriff Kitchens had stopped her son for speeding and then grabbed her son's arm. She wanted Sheriff Whittaker to fire Kitchens.

## II. LEGAL STANDARD

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying the portion of the record which demonstrates the absence of a genuine issue of material facts. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party themselves thereafter must produce specific facts demonstrating that a genuine issue of fact exists for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986). The Rule requires the non-moving party to present "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of scintilla of evidence in support of the [non-moving party's] position will be insufficient, there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477. U.S. at 252.

## III. ANALYSIS

### A. The § 1983 Claims

In his Complaint, the Plaintiff brings claims under 42 U.S.C. § 1983 alleging that Deputy

4

Kitchens and Sheriff Whittaker, in both their individual and official capacities, violated his constitutional rights. To state a claim under 42 U.S.C. § 1983, a plaintiff must establish that 1) he was deprived of a right secured by the Constitution or laws of the United States; and that 2) this deprivation was caused by a person acting under color of state law. Sigley v. City of Parma Heights, 437 F.3d 527, 533 (6th Cir. 2006). Here, the Plaintiff alleges that Defendant Kitchens violated his Fourth Amendment rights by using excessive force to effect his arrest on November 6, 2005. The Defendants contend that the Plaintiff's constitutional rights were not violated because Defendant Kitchens acted reasonably in the course of making the arrest.

A claim of "excessive force in the course of making an arrest...[is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." Marvin v. City of Taylor, 509 F.3d 234, 244 (6th Cir. 2007)(quoting Graham v. Connor, 490 U.S. 386, 388 (1989)). In "'determining the reasonableness of the manner in which a seizure is effected, the court 'must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" Id. (quoting Scott v. Harris, 127 S.Ct. 1769, 1778 (2007)). "This standard contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." Id. at 245 (quoting Burchett v. Kiefer, 310 F.3d 937, 944 (6th Cir. 2002)). In determining whether an officer's use of force was objectively reasonable, a court must consider the facts and circumstances of each particular case, including 1) the severity of the crime at issue; 2) whether the suspect poses an immediate threat to the safety of the officers or others; and 3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. Id. (citing Graham, 490 U.S. at 396). The Sixth Circuit has also found that "the definition of reasonable force is partially dependent on the demeanor of the suspect." Id. (quoting Solomon v. Auburn Hills Police Dep't, 389 F.3d 167, 174 (6th Cir. 2004).

A balancing of these factors suggests that the force used by Defendant Kitchens in effecting the arrest of the Plaintiff was objectively reasonable. As to the first, at the time Defendant Kitchens acted, he had probable cause to suspect the Plaintiff of at least three crimes - public intoxication (since he confronted the officers in the road in front of his home), disorderly conduct, and fleeing an officer. And although the first two are not necessarily serious crimes, the Sixth Circuit has recognized that fleeing an officer is a crime that should at least be considered "moderate in severity." Gaddis v. Redford Township, 364 F.3d 763, 774 (6th Cir. 2004). And, as to the second factor, although the Plaintiff did not pose an immediate threat to the officers as he stood on his porch, Defendant Kitchens could have reasonably concluded that the Plaintiff would pose a danger to the officers if he were allowed to flee into his home where Defendant Kitchens knew he kept multiple firearms. The reasonableness of Defendant Kitchens actions is also bolstered by the fact that he knew that the Plaintiff had previously pulled a firearm on at least one law enforcement officer. The third factor also weighs in favor of Defendant Kitchens since the video from the cruiser shows the Plaintiff fleeing the officers as they try to place him under arrest on his porch. Finally, as to the plaintiff's demeanor, the video and the Plaintiff's own testimony - that he had consumed seven 24-ounce beers and two shots of Jim Beam in the hour before the officers arrived at his home - confirm that the Plaintiff was intoxicated, defiant, and unpredictable at the time Defendant Kitchens decided to use his taser and then -when that did not incapacitate the Plaintiff - his pepper spray. See, e.g., Marvin, 509 F.3d at 246 (6th Cir. 2007)(recognizing that suspect's heavy intoxication created a volatile situation). Thus, based upon the totality of the circumstances, the Court concludes that Defendant Kitchens' use of a taser and then pepper spray upon the Plaintiff was objectively reasonable. This conclusion comports with the Sixth Circuit's recognition that officers may use nonlethal, temporarily incapacitating devices to take custody of an unarmed suspect if the circumstances are sufficiently pressing. See, e.g., Gaddis, 364

F.3d at 774; see also Monday v. Oullette, 118 F.3d 1099, 1104-05 (6th Cir. 1997)(use of pepper spray against large, intoxicated man who refused to go with officers to a hospital was reasonable); Vinyard v. Wilson, 311 F.3d 1340, 1348 (11th Cir. 2002)(noting that "courts have consistently concluded that using pepper spray is reasonable...where the plaintiff was either resisting arrest or refusing police requests, such as requests to enter a patrol car..." and that "pepper spray is a very reasonable alternative to escalating a physical struggle with an arrestee").

Finally, the Plaintiff argues that Defendant Kitchens used excessive force when, after the Plaintiff had been handcuffed, he pulled the Plaintiff up by his hair to get him to walk to the cruiser and failed to clean the pepper spray from the Plaintiff's eyes. The Court, however, disagrees. These acts were not so unconstitutionally disproportionate in degree to the circumstances as to establish that Defendant Kitchens used excessive force upon the handcuffed Plaintiff. Several courts have held that the act of pulling a handcuffed individual by his hair does not in itself amount to the use of excessive force. See, e.g., Vinyard, 311 F.3d at 1349 (holding that officer did not use excessive force when he dragged the handcuffed plaintiff into jail by either her shirt, arm, or hair); Gavin v. Ammons, 21 F.3d 430 (7th Cir. 1994)(holding that guard did not use excessive force when he pulled inmate's hair). And, although the video from the Defendant Kitchens' cruiser seems to establish that Kitchens did not wash the pepper spray from the Plaintiff's eyes following his arrest, the Court does not believe that this omission is sufficient to support a claim of excessive force, especially since the video also establishes that the Plaintiff only complained briefly and then calmly laid in the back of the cruiser, suggesting to Kitchens that he was no longer in pain.

Thus, the Court concludes that Defendant Kitchens used reasonable force in effecting the arrest of the Plaintiff. Accordingly, the Plaintiff's § 1983 claim against all of the Defendants fails because he has not established that his constitutional rights were violated and the Court, therefore, need

7

consider whether the individual Defendants are entitled to qualified immunity. See, e.g., Willis v. Neal, 247 Fed. Appx. 738, 744 (6th Cir. 2007) ; Marvin, 509 F.3d at 251 (6th Cir. 2007)(citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).

**B. The State Law Claims**

   **1.  Assault and Battery**

The Plaintiff has also alleged that Deputy Kitchens is liable to him for the state law torts of assault and battery. In Kentucky, an officer is not liable for assault or battery if, in the course of making an arrest, the officer used such physical force as was necessary, or in the exercise of reasonable judgment appeared to be necessary, to effect the arrest but no more. City of Lexington v. Gray, 499 S.W.2d 72, 74 (Ky. 1973); see also K.R.S. § 431.025(3). Because the Court has already determined that the Defendant Kitchens actions were objectively reasonable in the § 1983 context, the Court further concludes that the Plaintiff cannot prove a claim under Kentucky law.  See, e.g., Atwell v. Hart County, 122 Fed. Appx. 215, 219 (6th Cir. 2005).

   **2. Negligent Hiring and Retention**

Finally, the Plaintiff seems to allege that Sheriff Whittaker, in both his individual and official capacity, is liable to him for the tort of negligent hiring and retention with regard to Deputy Kitchens. And, indeed, Kentucky courts clearly recognize that "an employer can be held liable when its failure to exercise ordinary care in hiring or retaining an employee creates a foreseeable risk of harm." Oakley v. Flor-Shin, Inc., 964 S.W.2d 438, 442 (Ky. Ct. App. 1998).  The two elements of a suit for negligent hiring and retention are that 1) the employer knew or reasonably should have known that the employee was unfit for the job for which he was employed; and 2) the employee's placement or retention at that job created an unreasonable risk of harm to the plaintiff. Id.  However, this cause of action requires an underlying injury perpetrated by an employee; thus, because the Court has held that there was no

legally cognizable underlying injury in this case, the Defendants are entitled to judgment as a matter of law on this claim as well. See, e.g., Arlinghaus v. Gallenstein, 115 S.W.3d 351, 353 (Ky. 2003).

## IV. CONCLUSION

For the foregoing reasons, the Defendants' motion is **GRANTED**. **IT IS SO ORDERED**.

cc: Counsel of Record